## WASHITA COUNTY GIN CO. et al. v. COLBERT et al.

No. 26124. Feb. 18, 1936.

Thos. H. Owen and Paul N. Lindsey, for petitioners.

Mac Q. Williamson, Atty. Gen., and Houston W. Reeves, Asst. Atty. Gen., for respondent State Industrial Commission.

PHELPS, J. Stripped of its unessentials the facts are these: On joint petition for final settlement the State Industrial Commission made a final award to the effect that the employer's insurance carrier should pay claimant, an injured employee, the sum of $1,100, but should deduct therefrom and pay to the employee's attorney $275 as fee. The insurer then delivered two drafts to the attorney. One draft was for $275, payable to the attorney. The other was for $825, payable to the claimant. The attorney took both drafts to a bank, along with a power of attorney executed by claimant, who was ill in another city, Cordell, Okla. The power of attorney authorized the attorney to settle the claim for $1,100 and to accept and indorse the draft therefor and to do all things which the claimant could personally do if present. The attorney indorsed the draft made payable to claimant

by signing claimant's name on the reverse side, and adding his own signature as attorney in fact, preceded by the word "by." He also indorsed his own draft, for $275. The drafts were drawn on a bank in Baltimore, Md., and were paid May 4, 1933. The claimant died on May 6, 1933. Within a few days thereafter the attorney took the money to Cordell, Okla., where claimant had lived, and learned of the death.

Instead of turning over the $825 to the widow and dependent children, or to an administrator, the attorney delivered the widow $335, placed $50 in escrow to be used in satisfying a judgment against deceased, and paid $35 to claimant's local attorney who had placed the case in his hands. He also paid certain doctors' bills for claimant in Cordell, and then returned to Oklahoma City with $360 with which to satisfy medical claims existing against the deceased claimant in Oklahoma City. There had been no provision in the award for payment of medical bills.

Shortly thereafter the relatives of deceased claimant, and also the Cordell attorney, complained to the commission that the widow had not received that to which she was entitled, although she had signed a receipt for the full $825 upon the representation that only in that manner could she receive any money at all, except through prolonged probate procedure. Thereupon the then chairman of the commission called a hearing for the announced purpose of making a record for disciplinary action by the State Bar of Oklahoma. Much evidence was taken, and the hearings finally culminated in an order requiring the insurance carrier to again pay that part of the award which the widow had not received, namely, $490. The insurance carrier has instituted this action to review that order. Questions concerning the propriety of the attorney's conduct or his liability, if any, to the widow or insurer are not before us.

The theory upon which the order appears to be based is that petitioner was without authority to discharge the obligation by delivering claimant's draft to his attorney; that in view of section 13372, O. S. 1931, prohibiting assignments of awards and providing that "compensation and benefits shall be paid only to employees," the petitioner had not complied with the former award in the manner prescribed by law. Such theory is so patently erroneous that the controversy may be disposed of on this phase alone,

without considering the other assignments presented.

Had petitioner paid cash to the attorney, we would be faced with the necessity of deciding whether the provision in section 13372, to the effect that "compensation and benefits shall be paid only to the employee," was intended as an exception to section 4202, O. S. 1931, which provides that an attorney has power to receive money claimed by his client in an action or proceeding during the pendency thereof, or afterwards. But no cash was paid to the attorney for the client, nor did the petitioner empower the attorney to ever obtain any cash from the draft, or to assume possession or control of the money eventually derivable from the draft. The draft was made payable to the claimant; the attorney's name did not appear upon it. It was delivered to the attorney, for its redelivery to the claimant, and the claimant could then make such disposition of it as he desired. If the claimant desired the attorney to cash the draft for him, and gave him power of attorney to accomplish that end, it was a matter entirely between them; the petitioner was not a party to the agreement.

The petitioner's delivery of the draft to the attorney for claimant, payable only to the claimant, is the prevailing practice and custom in the Industrial Commission. The law does not require of the insurance carrier that it protect the claimant against the fraud of his own attorney. It does not go so far as to require the insurance carrier to locate the claimant, wherever he may be, and deliver his compensation to him personally, or to follow the attorney to the claimant and see to it that the claimant actually receives the cash. Such procedure could only be justified upon the assumption that the honor of the claimant's attorney is exceeded by that of the insurer's representative.

There is no questioning the fact that the insurer "paid." The question is, who was "paid," the attorney or the claimant? In the sense that claimant died before the attorney ever attempted delivery of the cash to him, he was not "paid"; that is, personally. In the sense that his attorney in fact (whom in writing he had authorized to indorse the draft and do all things which he could have done if present) actually did indorse the draft and receive the cash prior to claimant's death, the claimant was "paid." Prior to claimant's death the money was in possession of his agent. No bills had been paid. The disposition of the money was subject to claimant's control; he could demand all of it from the attorney or he could consent that the attorney pay the debts and remit the remainder. The latter is exactly what the representatives of the deceased claimant did consent to, though possibly under duress or undue influence. But if they were defrauded by the attorney, they have their remedy at law. Why cast the burden back again upon the insurer, whose only "fault" was the prompt payment by draft payable to the claimant, and delivery thereof to the doubly constituted agent of claimant?

Suppose an accident should render an employee insane after the final award and before payment thereof and the insurer should pay the guardian, who absconds with the money. Must the insurer make good the loss, because it had failed to pay the claimant personally in cash? The statute prescribes that the compensation shall be paid "only to the employee." The answer is obvious. No. And yet the law clothes the guardian with no greater power to contract for his ward than was here created and granted by the claimant to the attorney, for the particular purpose sought to be accomplished.—a purpose, we may observe, nowhere forbidden by the Workmen's Compensation Act.

It may be true, as suggested by the commission, that such a power of attorney could be used as a cloak for assignments, which are forbidden, but this could only occur with the assistance of fraud by the claimant himself, for assignments transfer titles, while powers of attorney do not purport to do so. As in all other classes of cases, if the fraud be found, its effect may be compensated in the proper forum. But the attempt to commit fraud, and too often the actual commission thereof, are possible under any branch of the law, and hence it is that the mere remote possibility of fraud is never a reason for refusing otherwise rational doctrines of law.

There are other propositions advanced by petitioner, but we have chosen to dispose of this action on its basic merits, and it is therefore unnecessary to consider the other contentions.

The order is vacated.

McNEILL, C. J., and RILEY, CORN, and GIBSON, JJ., concur.